[No. 17894. *En Banc.* December 27, 1923.]

CHARLES J. McMILLAN *et al., Respondents,* v. AUTO
INTERURBAN COMPANY, *Appellant.*[1]

CARRIERS (88) — NEGLIGENCE — EVIDENCE — QUESTION FOR JURY. There is sufficient evidence of negligence in the driving of an auto stage, where it appears that it was running twenty-five or thirty miles per hour when a front tire blew out, that the blow-out was noticed immediately, and there was evidence that it ran 140 to 200 feet along the highway, plunged into and across a ditch six feet wide and four feet deep and across plowed ground, without materially diminishing its speed, and struck a tree 300 feet distant from the place of the blow-out (MACKINTOSH, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered November 29, 1922, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained by a passenger in an auto stage. Affirmed.

[1]Reported in 221 Pac. 314.

*McCarthy, Edge & Lantz,* for appellant.

*A. D. McLaren, C. E. Ellis,* and *Charles E. Swan,* for respondents.

MITCHELL, J.—This is an action to recover damages for personal injuries received by Mrs. McMillan while being carried as a passenger for hire on an auto stage owned and operated by the defendant. The tire of the left front wheel blew out, after which the stage ran a considerable distance, left the highway, struck a tree and overturned. The verdict was for the plaintiffs. After the verdict, the defendant filed a motion for a judgment notwithstanding the verdict, or for a new trial, and thereafter expressly waived the motion for a new trial and elected to stand on the other motion, which was denied, and the appeal has been taken from a judgment on the verdict.

The assignments of error are based on the denial of motions for a nonsuit, a directed verdict, and for judgment notwithstanding the verdict.

The accident happened in the afternoon. When the tire blew out, the stage was running at a speed of twenty-eight to thirty miles an hour, appellant testified twenty-five miles an hour. The blow-out was noticed immediately by the passengers and the driver. Thereafter the stage veering to the left, ran, according to estimates of the various witnesses, from one hundred and forty to two hundred feet along the highway, plunged down into and across a ditch six feet wide and four feet deep, thence over plowed land, and came in contact with an apple tree and overturned, one hundred and twenty to two hundred feet from the highway, at which point Mrs. McMillan was injured.

It is insisted by the appellant that the only question raised by the appeal is: "Does the doctrine of *res ipsa loquitur* apply in cases where the cause of the accident

is shown?'' The respondents contend that, while that question is in this case as a presumption of negligence upon the failure of the appellant to safely carry the passenger, the case has in it also the question of the positive negligence of the appellant. For the purpose of the decision it may be conceded, as it is so much argued on behalf of the appellant, that the rule of *res ipsa loquitur* does not apply in this case because it was shown that the blow-out of the tire, a known cause, was first in the train of circumstances leading to the accident, and that there was proper selection and inspection of the tire a reasonably short time before the mishap. Nevertheless there was sufficient evidence of negligence on the part of the appellant after the blowout of the tire to take the case to the jury.

The appellant testified that, upon the tire blowing out, the engine was disconnected from the drive shaft, ''the service brake on the stage was applied immediately upon the tire blowing out and was continuously set and applied thereafter until the stage overturned,'' although the engine was still running at the time the stage turned over, and that the speed of the car was noticeably decreased. The witnesses for the respondents testified differently. Mrs. McMillan testified that, after the tire blew out, there was no appreciable decrease in the speed of the car to the point of its leaving the highway. She said nothing about the speed from that point. Another witness, a passenger, testified:

''Q. Did the speed of the vehicle decrease or diminish between the time the tire blew out and the time that it ended up against the apple tree and overturned? A. Not perceptibly, no. . . . Q. And it did not perceptibly decrease the speed until it reached the apple tree? A. Naturally going through the rocks and dirt would slow it up.''

When asked to estimate the speed at the time the stage left the highway, he said probably twenty miles an hour. Another witness, a passenger, estimated the distance from the point of blow-out to the apple tree as about three hundred feet, and further testified:

"Q. And had its speed decreased during this time that it was travelling this three hundred feet, from the time the tire blew out? A. I think not. Q. You didn't notice any decrease in speed? A. No. Q. Then when it left the road, where did it go? A. Into the orchard. Q. Well, how far would that be from the road? A. Well, the speed was so rapid when it left the road, I couldn't tell, it might have been fifty feet; I don't know because it simply plunged when it left the road; the speed was very rapid."

Another witness, a passenger, testified: "Q. You noticed no diminution of speed from the time of the blow-out until the time when the machine stopped? A. I didn't notice it, no." Another witness, not a passenger, who heard the blow-out and watched the stage thereafter, testified that, when the stage hit the tree, it was going twenty to twenty-five miles an hour; that, after it left the highway, it crossed the ditch, six feet wide and four feet deep, thence across plowed land to the tree. A deputy sheriff, called to the scene, testified:

"Q. Did it show any marks as to the course it traveled on the rim? A. On the pavement, the concrete pavement, there was a little white line where the surface of the rim had cut and broken the pavement there a little bit, it was just noticeable, and over to the edge where it went off of the road it went into some deep rocks and plowed rocks apart where the wheel went through, and those marks you could tell very plainly there where it went off the road."

Such was, in effect, all the testimony in the case as to the manner in which the stage was handled after

the blow-out of the tire.    All of it was introduced before respondents had closed their case in chief.    That portion of it on behalf of the appellant was supplied by answers to interrogatories under §§ 1226 and 1227, Rem. Comp. Stat. [P. C. §§ 7760, 7761], and was rebutted by adverse testimony on behalf of the respondents, as provided for by § 1229 of the code.    Under the facts and circumstances proven in the case, the questions of whether the driver did anything for the safety of the passengers after the blow-out of the tire, and if so, whether it measured up to the skill and care required of a public carrier, were such that they could not be determined as a matter of law in favor of the appellant.

Affirmed.

MAIN, C. J., PARKER, BRIDGES, HOLCOMB, TOLMAN, and PEMBERTON, JJ., concur.

FULLERTON, J., concurs in the result.

MACKINTOSH, J. (dissenting)—It being admitted that the appellant was not responsible for the blow-out and there not being a particle of testimony that the stage could have been stopped any sooner than it was thereafter, the jury should not have been allowed to guess that it could.    I therefore dissent.